UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE NANCY SHEALY HOLDAWAY, § § § *Appellant.* § § | | CIVIL ACTION NO. H-08-1532 |

| | | |
|---|---|---|
| BETTY R. WINN, § § *Plaintiff*, § § v. § § NANCY SHEALY HOLDAWAY, § § *Defendant.* § | | BANKRUPTCY CASE NO. 07-32597 ADVERSARY NO. 07-3321 |

**ORDER**

Pending before the court is Appellant Nancy Shealy Holdaway's appeal from the bankruptcy court's Final Judgment. 07-3321, Dkt. 57. After considering the parties' briefs, the record on appeal, and the applicable law, the court **AFFIRMS** the bankruptcy court's Final Judgment.

**I.   BACKGROUND**

**A.   FACTUAL BACKGROUND**

Debtor Nancy Shealy Holdaway ("Holdaway") is the daughter of Betty Winn ("Winn"). 08-1532, Dkt. 8 at 3. When Holdaway's father died in 1993, Winn asked either her daughter or her daughter's then husband, Paul Buchanan ("Buchanan") to manage her finances. *See* 07-3321, Dkt. 57 at 4. There is some dispute over whether it was Holdaway or Buchanan who was to actually manage the finances, but it is undisputed that Winn relinquished control to one of them. *Id.* It is also undisputed that Holdaway did in fact manage her mother's finances. *Id.*

Holdaway handled all of Winn's accounts and sent her mother a check each month to cover her living expenses. 08-1532, Dkt. 8 at 4. Holdaway helped her mother sell her home and buy a new car. 07-3321, Dkt. 57 at 5-6. Additionally, she set up two accounts on behalf of Winn, an E-Trade account and a Merrill Lynch account. *Id.* at 4. Both of these accounts were funded entirely with Winn's funds, and were set up in the names of Winn and Holdaway as joint tenants with rights of survivorship. *Id.* Holdaway received all of the account statements for these accounts, and her signature was on all of the checks which form the basis of Winn's claim in this action. *Id.* Winn would occasionally sign documents associated with these accounts at the direction of Holdaway. *Id.* at 5.

Five checks written on the E-Trade account form the basis of the dispute tried to the bankruptcy court. The four checks were (1) $50,000 to Paul Buchanan; (2) $50,000 to Datek Online for "new stock trading account;" (3) $20,000 to cash; (4) $2,500 to Paul Buchanan; and (5) $25,000 to Paul Buchanan. *Id.* at 13. At trial, Holdaway could not recall the purposes of these checks. *Id.* She stated that the $2,500 and $25,000 checks to Paul Buchanan may have been to reimburse him for expenses. *Id.* Other than a recitation of the memo lines on the checks, Holdaway had no explanation of how the money was used. *Id.*

Holdaway had eight or nine meetings with a Merrill Lynch representative to discuss that account. *Id.* Winn was not at any of these meetings. *Id.* Sometime prior to August, 2001, Holdaway learned of a significant drop in the value of the Merrill Lynch account. *Id.* She had instructed Merrill Lynch to cash out the account if the balance dropped below $80,000. *Id.* Merrill Lynch allegedly allowed the account to drop significantly below this amount. *Id.* In August, 2001, Holdaway told Winn of the drop in the balance and convinced Winn that she needed to sue Merrill

Lynch for failing to cash out the account, which she did. *Id.* In preparing for the Merrill Lynch trial, Holdaway wrote that "I have been the custodian of my mother's account since my dad died 8 years ago." *Id.* It is apparent that Winn entrusted her Merrill Lynch account to Holdaway.

On July 15, 2002, Winn and Holdaway both attended a family meeting where Holdaway informed Winn that she had approximately $20,000 remaining in her accounts. *Id.* at 16. Winn testified that she was shocked by this information, and family members accused Holdaway of misappropriating Winn's funds. *Id.* On that same date, Holdaway removed herself from two of Winn's bank accounts. *Id.*

### B. PROCEDURAL BACKGROUND

On July 7, 2006, Winn filed an action in state court against Holdaway and Buchanan alleging that they embezzled money from her and breached their fiduciary duty to her. On April 17, 2007, Holdaway filed her bankruptcy petition. 07-32597, Dkt. 1. Winn then filed an adversary Complaint to Determine Dischargeability. 07-3321, Dkt. 1. Winn sought to have certain debts held non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). After a two-day trial, the bankruptcy court entered a Final Judgment finding in favor of Holdaway under 11 U.S.C. § 523(a)(2)(A) and in favor of Winn under 11 U.S.C. § 523(a)(4). The bankruptcy court held that Holdaway owed a non-dischargeable debt of $147,500.00 plus interest to Winn. Holdaway has appealed that final judgment to this court. 08-1532, Dkt. 1.

Appellant has presented five issues in her appeal:

1. Did the bankruptcy court err in determining that a claim for embezzlement under 11 U.S.C. § 523(a)(4) was properly before the court?

    2.    Did the bankruptcy court err in holding that Appellee proved her claim for embezzlement by a preponderance of the evidence? [1]

    3.    Did the bankruptcy court err in holding that the statute of limitations on Winn's claim began to run on July 15, 2002?

    4.    Did the bankruptcy court err in applying Texas fiduciary law to determine the existence of a pre-petition debt?

    5.    Did the bankruptcy court err in applying *In re McKendry*, 40 F.3d 331 (10th Cir. 1994) to determine the dischargeability of Appellant's debt?

## II. ANALYSIS

### A. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a)(1), this court has appellate jurisdiction over final judgments and orders of bankruptcy courts. *In re* Moody, 817 F.2d 365 (5th Cir. 1987). A bankruptcy court's findings of fact are reviewed for clear error, with proper deference to that court's opportunity to make credibility determinations. Fed. R. Bank. P. 8013; *In re McDaniel*, 70 F.3d at 843. Legal conclusions, as well as mixed questions of law and fact are reviewed *de novo*. *Id.*; *In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993). Under *de novo* review, this court will make a judgment independent of that of the bankruptcy court and without deference to that court's analysis and conclusions. *See Coston v. Bank of Malvern*, 987 F.2d 1096, 1099 (5th Cir. 1992).

### B. ANALYSIS OF ALLEGED POINTS OF ERROR

**1. The bankruptcy court did not err in determining that a claim for embezzlement was properly before it.**

---

[1] Appellant does not explicitly list this issue in her "Statement of Issues Presented." 08-1532, Dkt. 4 at v. However, she presents this argument in her analysis of issue number 1, so this court will consider it fully.

Winn's Complaint to Determine Dischargeability alleges that the purported debt owed by Holdaway as a result of her mismanagement of Winn's finances is exempt from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523 (a)(4). *See* 07-03321, Dkt. 1 at 3.  11 U.S.C. § 523(a)(2)(A) provides that a discharge in bankruptcy is unavailable "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  During trial, Holdaway moved for judgment as a matter of law, and the bankruptcy court granted her motion as it related to the claim of dischargeablilty under § 523(a)(2)(A).  The bankruptcy court held that "Holdaway did not make any misrepresentations to *obtain* Winn's money or property.  Winn relinquished her property into Holdaway's control." 07-03321, Dkt. 57 at 6. Accordingly, the court found that Winn had not proven a claim under § 523(a)(2)(A), and the judge dismissed that claim.  Neither party has appealed this decision by the bankruptcy court.

11 U.S.C. § 523(a)(4) also exempts from dischargeability "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  In its Memorandum and Opinion on Final Judgment, the bankruptcy court held that Winn did not meet the legal requirements for "fraud or defalcation while acting in a fiduciary capacity." 07-03321, Dkt. 57 at 11.  Specifically, the bankruptcy court found that although the relationship between Winn and Holdaway met the requirements of a fiduciary relationship under Texas law, it was insufficient to sustain a claim under § 523(a)(4) for a breach of fiduciary duty.  Claims under § 523(a)(4) for breach of fiduciary duty are subject to federal law, which requires an express or technical trust. *Miller v. J.D. Abrams Inc.*, 156 F.3d 598, 602 (5th Cir. 1998).  The bankruptcy court found that Holdaway and Winn did not establish an express trust, so their relationship did not meet the requirements for a fiduciary relationship under

5

federal law. 07-03321, Dkt. 57 at 6-12. Neither party has appealed this finding of the bankruptcy court.

After determining that there was not a fiduciary relationship under § 523(a)(4), the bankruptcy court then considered whether the debt was one for embezzlement, which would also be non-dischargeable under § 523(a)(4). The bankruptcy court determined that Holdaway's actions did constitute embezzlement, and that the debt owed to Winn was exempt from discharge. It is this finding that Holdaway now appeals.

Section 523(a)(4) embezzlement is defined by federal law. *In re Davenport*, 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006) (citing *In re Hayden*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000)). Under federal law, embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Miller*, 156 F.3d 598, 602 (1998). The bankruptcy court found that Holdaway's debt to Winn was incurred by embezzlement and was therefore, exempt from discharge. Holdaway argues on appeal that a claim for embezzlement was not properly before the bankruptcy court and that the court erred by considering such a claim.

Federal Rule of Civil Procedure 8, which applies to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008, requires adversary complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Winn's complaint states that "Defendant's theft of Plaintiff's assets, as referenced in paragraph 8 constitutes an intentional act of fraud by Defendant and was committed while Defendant was acting in a fiduciary capacity with respect to Plaintiff." and that Holdaway's debt was "incurred through actual fraud within a fiduciary capacity, and is thus non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4)."

6

07-03321, Dkt. 1 at 4. The citation to § 523(a)(4) together with Winn's characterizations of Holdaway's actions as theft was enough to put Holdaway on notice of Winn's embezzlement claim.

The debtor before the Fifth Circuit in *In re Schwager*, 121 F.3d 177, 186 (5th Cir. 1997) argued that creditors failed to raise defalcation as a ground for nondischargeability because they did not use the word "defalcation" in their complaint. The Fifth Circuit held that the debtor had ample notice of the claim since the creditors cited § 523(a)(4) in their complaint. Moreover, the debtor did not assert that he had any evidence that he did not present, so the error was harmless. *Id.* Here, Holdaway had sufficient notice of an embezzlement claim, and the bankruptcy court did not err in reading the complaint as raising an embezzlement claim. Winn cited § 523(a)(4) in her complaint and alleged that Holdaway's actions were theft. 07-03321, Dkt. 1 at 4. This is enough to put Holdaway on notice of an embezzlement claim. As in *Schwager*, Holdaway has not cited any evidence that was not previously presented that she would have presented if she had known she was defending an embezzlement claim.

Even if Winn's complaint did not put Holdaway on notice of an embezzlement claim, the claim was tried by consent. Federal Rule of Civil Procedure 15(b)(2), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7015, states that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." The record shows that a claim of embezzlement was tried by implied consent, even if it was not raised in the pleadings. While discussing Appellant's motion for judgment as a matter of law, the bankruptcy judge repeatedly stated that he thought Winn had made a case for embezzlement, and that the allegations against Holdaway met the elements of an embezzlement claim. 07-03321, Dkt. 72. During this extended colloquy, Holdaway's counsel never

properly objected to the inclusion of an embezzlement claim, and in fact argued that embezzlement had not been proven during Winn's case-in-chief. *Id.* at 7.  Even if Holdaway did not have notice of an embezzlement claim from Winn's pleadings, she certainly had notice of it after this exchange with the court, which occurred before the presentation of Holdaway's case.  This conclusion is bolstered by the fact that during her case, Holdaway presented evidence attempting to show that Winn did not entrust her money to Holdaway and that she did not steal or misappropriate Winn's money.  This presentation of evidence is in keeping with a defense against an embezzlement claim. Since Holdaway had adequate notice of an embezzlement claim, the bankruptcy court did not err in determining that such a claim was properly before it.

**2. The bankruptcy court did not err in finding that Winn proved her embezzlement claim by a preponderance of the evidence.**

Holdaway argues that Winn did not prove the elements of an embezzlement claim at trial. In support of this argument, Holdaway states that the funds at issue were not accessible only by Holdaway and that she mailed statements to Winn explaining disbursements.  A bankruptcy court's findings of fact are reviewed for clear error, with proper deference to that court's opportunity to make credibility determinations.  Fed. R. Bank. P. 8013; *In re McDaniel*, 70 F.3d at 843.

Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."  *In re Miller*, 156 F.3d at 602.  Evidence was presented at trial that Holdaway wrote several checks on Winn's account that Winn had no knowledge of and which Holdaway could not explain.  The bankruptcy court's findings indicate that it did not believe Holdaway's testimony and that "as a witness, she completely lacked credibility."  07-03321, Dkt. 57 at 13.  The evidence at trial coupled with the bankruptcy court's

8

determinations regarding Holdaway's credibility are enough for this court to determine that the court properly found that Winn proved her claim of embezzlement beyond a preponderance of the evidence.

Holdaway also argues that "[u]nder the bankruptcy court's own ruling with respect to the 11 U.S.C. § 523(a)(2)(A), in which the court found for Appellant, Appellant necessarily committed no fraud on Appellee." 08-01532, Dkt. 4 at xviii. This argument completely mischaracterizes the bankruptcy court's ruling as outlined above. The bankruptcy court found in favor of Holdaway on the § 523(a)(2)(A) claim, not because there was no fraud at all, but because Holdaway did not **obtain** the funds through fraud. The bankruptcy court made no finding of an absence of fraud, and its ruling on the § 523(a)(2)(A) claim is entirely consistent with its ruling on the § 523(a)(4) claim.

**3. The bankruptcy court did not err in its application the discovery rule to Winn's claim.**

Winn filed her state court action for breach of fiduciary duty under Texas law on July 7, 2006. In Texas, a four year statute of limitations applies to a cause of action for breach of fiduciary duty. TEX. CIV. PRAC. & REM. CODE § 16.004(A)(5). Typically, a "cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if resulting damages have not yet occurred." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). However, some claims are excepted from this rule and are instead covered by the "discovery rule." *Id.* The discovery rule "applies in cases of fraud and fraudulent concealment, and in other cases in which 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). In cases where the discovery rule is applicable, the action "does not accrue

9

until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Id.* The bankruptcy court held that the statute of limitations began to run on July 15, 2002, the date of the family meeting where Winn discovered the balance of all of her accounts. Since Winn filed her action on July 7, 2006, she was within the four year limitations period.

Holdaway does not argue that the discovery rule is inapplicable. Rather, she argues that the statute of limitations should have started running after Holdaway informed Winn about the drop of balances in the Merrill Lynch account in August, 2001. If the limitations period began running in August, 2001, Winn's state-court lawsuit was not timely filed.

The order of the bankruptcy court is very clear in distinguishing between the Merrill Lynch account and the E-Trade account. 07-03321, Dkt. 57 at 15. Specifically, the court held that there was no evidence that the decline in the value of the Merrill Lynch account was due to anything other than market conditions. *Id.* The court's judgement in Winn's favor was based exclusively on checks written on the E-Trade account. *Id.* Accordingly, it is irrelevant when Winn discovered the low balance of her Merrill Lynch account. Since Winn's damages were all related to her E-Trade account, the relevant date for commencement of the limitations period is when Winn knew or should have known about the drop in the balance of the E-Trade account. This did not occur until the family meeting on July 15, 2002. The bankruptcy court did not err in determining that this date was when the limitations period began and that the state-court lawsuit was timely filed.

**4. The bankruptcy court did not err in applying Texas fiduciary duty law to determine the existence of a pre-petition debt.**

Winn's state-court petition alleges claims for breach of fiduciary duty and for embezzlement. The bankruptcy court found that the state-law embezzlement claim was not timely since it was filed outside of the two-year limitation period applicable to state-law embezzlement claims. The bankruptcy court determined the existence of a pre-petition debt related to Winn's state court fiduciary duty claim by reference to Texas fiduciary law. 07-03321, Dkt. 57 at 18. Holdaway argues that this was erroneous since the only "fiduciary issue . . . concerned the fiduciary capacity issue under 11 U.S.C. § 523(a)(4)," and the bankruptcy court determined that there was no fiduciary relationship under that provision. 08-01532, Dkt. 4 at xx. This argument completely muddies the distinction between the determination of the existence of a pre-petition debt and the dischargeability of that debt in bankruptcy.

"The validity of a creditor's claim is determined by state law. Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 658, 112 L. Ed. 2d 755 (1991). Accordingly, it was entirely appropriate for the bankruptcy court to consider Texas fiduciary law to determine the existence of a pre-petition debt. 07-03321, Dkt. 57 at 16-17. Upon determining that Winn established the elements for a breach of fiduciary duty claim under Texas law, the bankruptcy court then applied the bankruptcy code to determine whether that debt was dischargeable. (*Id.* at 18). As analyzed above, the bankruptcy court correctly determined that the debt was nondischargeable since it was procured through embezzlement as defined under federal law.

Holdaway argues that since the bankruptcy court found that Holdaway did not establish a fiduciary relationship under § 523(a)(4), there can be no pre-petition debt based on a claim of fiduciary duty. This ignores the possibility, and indeed the actuality, that a relationship may not

11

satisfy the standard for a fiduciary duty as established by federal law but still satisfy the requirements for a fiduciary relationship under Texas law. Additionally, Holdaway does not acknowledge that the debt established by the meritorious Texas claim for breach of fiduciary duty is covered by the federal definition of embezzlement, even though it is not covered by the federal definition of fiduciary duty. It is the federal characterization of the pre-petition debt as one incurred through embezzlement that makes it nondischargeable. The bankruptcy court did not err in applying Texas law of fiduciary duty to determine the existence of a pre-petition debt.

**5. The bankruptcy court did not err in apply *In re McKendry* to determine that the debt to Winn was nondischargeable.**

Holdaway's final point of error is closely related to the one analyzed in section 4 above. She argues that the bankruptcy court erred in applying *In re McKendry*, 40 F.3d 331 to determine the dischargeability of the debt to Winn. In support of her argument, Holdaway states that "[t]he bankruptcy court held that the debt arose from embezzlement, even though the court stated that embezzlement was barred by limitations." 08-01532, Dkt. 4 at xxi. This statement capitalizes on an uncertain use of the word "embezzlement" to distort the finding of the bankruptcy court. As noted above, the bankruptcy court actually held that the debt arose from embezzlement as defined by federal law, even though the state-law claim for embezzlement was barred by the statute of limitations.

The bankruptcy court cited *In re McKendry* for the proposition that "although the state statute of limitations expired, a state law statute of limitations is irrelevant to categorizing a 'debt' for dischargeability purposes." 07-03321, Dkt. 57 at 18. The *McKendry* court based its holding on the distinction, analyzed above, between the determination of the existence of a pre-petition debt and

12

the determination of whether that debt is dischargeable. *In re McKendry*, 40 F.3d at 337. The court held that a state statute of limitations is applicable to the former, but not the latter–the same determination made by the bankruptcy court in this case.

Holdaway argues that the holding is inapplicable to this case because Winn's debt had not been reduced to judgment at the time of the dischargeability proceeding, whereas, the debt in *McKendry* had. This distinction is of no moment since the reasoning in *McKendry* is equally applicable to a case such as this where the state-court litigation is stayed upon the debtor's bankruptcy filing. This was confirmed by the court in *In re Banks*, 263 F.3d 862, 868 (9th Cir. 2001), which specifically held that the rule in *McKendry* is applicable to cases in which the state-court action was timely filed, but the claim was not reduced to judgment prior to the bankruptcy filing. Indeed, the bankruptcy code defines the term "debt" as a "liability on a claim," and a "claim" as a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. §§ 101(12), 101(5). Since there is nothing in the bankruptcy code or accompanying case law that requires a state-court judgment in order to establish a pre-petition debt, it was not erroneous for the bankruptcy court to apply *McKendry* in determining that Winn's claim was not time-barred under state law, and was nondischargeable under 11 U.S.C. § 523(a)(4).

### III. CONCLUSION

The court finds that the bankruptcy court committed no error, and **AFFIRMS** its Final Judgment.

Signed at Houston, Texas on March 26, 2009.

_____
Gray H. Miller
United States District Judge